UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANTONIO WALLS, | |
| Plaintiff, | No. 19 C 06468 |
| v. | Judge Thomas M. Durkin |
| CHICAGO POLICE SGT. NICHOLAS VASSELLI, Star # 2213, et al., | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

After felony charges against him were dropped in a prior criminal case, Plaintiff Antonio Walls sued several Chicago police officers and the City of Chicago alleging excessive force, conspiracy, deprivation of liberty, and malicious prosecution under Illinois law and 42 U.S.C. § 1983. During discovery, Walls subpoenaed the Cook County State's Attorneys' Office ("CCSAO") for the criminal file in his case. Walls now moves to compel production of certain materials responsive to that subpoena but withheld by CCSAO as privileged. For the reasons set out below, the Court enters and continues Walls's motion pending *in camera* review of the withheld document.

**Background**

In his complaint, Walls alleges that on May 2, 2018, the Defendant Chicago Police Officers violently tackled and beat him while responding to a 911 call, resulting in several injuries including a broken arm. Walls alleges that the Defendant Officers then conspired to cover up their use of excessive force by fabricating evidence and filing false police reports, which resulted in Walls being charged with felony

1

Aggravated Battery to a Police Officer. The felony charge was dismissed on June 11, 2019, and Walls pleaded guilty to criminal damage to property and was sentenced to probation. R. 58-4.

Walls filed this lawsuit on September 30, 2019. On November 29, 2021, Walls subpoenaed the CCSAO's criminal file for his aggravated battery prosecution. On December 15, 2021, the CCSAO returned responsive materials to Walls, along with a two-page privilege log. The privilege log was not initially accompanied by an affidavit but claimed privilege over certain handwritten notes under the "Common Law Privilege of Work Product."

On January 31, 2022, the CCSAO re-submitted the privilege log with a signed affidavit from ASA Andrew Yassan. The relevant privilege log entry identifies a document bearing Bates Number 12 described as "Handwritten notes by ASA Andrew Yassan related to mental impressions regarding the case." R. 55-1. Under "Privilege(s) Asserted," the log states: "Common Law Privilege of Work Product as recognized in *Hickman v. Taylor*, 329 U.S. 495 (1947) ("*Hickman*") protecting documents prepared by attorneys in anticipation of litigation revealing their mental impressions and strategy." R. 55-1. In his affidavit, ASA Yassan says that he authored the notes in April and May of 2019. He further states:

> 6. The redacted portions of my notes were written in anticipation of prosecuting Defendant Antonio Walls and contain my mental impressions regarding charging decisions in representation of the people of the State of Illinois in the criminal case.
>
> 7. Furthermore, the redacted portions of my notes discuss my trial strategy.

8. The redacted portion of my notes also include my mental impressions of information and strategies discussed with my fellow attorneys which affected my decision-making process.

R. 55-1.

## Discussion

"Under Rule 45, a party withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must (1) expressly make the claim and (2) describe the nature of the withheld documents in a manner that will enable the parties to assess the claim." *Hill v. City of Chicago*, 2015 WL 12844948, at *2 (N.D. Ill. May 28, 2015) (citing Fed. R. Civ. P. 45(e)(2)(A)). "[B]ecause evidentiary privileges operate to exclude relevant evidence and thereby block the judicial fact-finding function, they are not favored and, where recognized, must be narrowly construed." *Mem'l Hosp. for McHenry Cty. v. Shadur*, 664 F.2d 1058, 1061 (7th Cir. 1981).

CCSAO claims the redacted notes are protected from disclosure by the work product and deliberative process privileges. Walls denies that either privilege applies to the notes. He also argues that even if either privilege applies, his particular need outweighs the CCSAO's interest in keeping the notes confidential.

1. <u>Work Product Privilege</u>

Walls argues that the CCSAO may not claim work product protection over the redacted notes because it is not a party to this case. The Court agrees. Rule 26(b)(3) governs application of the work product doctrine in civil litigation and states: "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its

3

representative" absent a showing of "substantial need" and an inability to obtain equivalent materials by other means. *Id.* By its own terms, "the rule limits protection to one who is a party (or a party's representative) to the litigation in which discovery is sought." *Hawkins v. S. Plains Int'l Trucks, Inc.*, 139 F.R.D. 682, 684 (D. Colo. 1991).

      This Court and many others have held that non-parties may not invoke the work product doctrine to withhold documents sought via a Rule 45 subpoena. *See, e.g.*, *Hill*, 2015 WL 12844948, at *2 (collecting cases). In fact, many courts have "expressly found the [work product] privilege unavailable when a prosecutor in a prior criminal investigation later objects to discovery of her work product by a litigant in a related civil lawsuit." *Hernandez v. Longini*, 1997 WL 754041, at *2 (N.D. Ill. Nov. 13, 1997) (citing *Schultz v. Talley*, 152 F.R.D. 181 (W.D. Mo. 1993), and *Doubleday v. Ruh*, 149 F.R.D. 601 (E.D. Cal. 1993)). Furthermore, because the CCSAO is not an adversarial party in this case and the criminal matter has long since resolved, the purposes of work product protection described in *Hickman* are not of significant concern. *See Hobley v. Burge*, 433 F.3d 946, 949 (7th Cir. 2006) ("The purpose of the qualified privilege for attorney work product … is to establish a zone of privacy in which lawyers can analyze and prepare their client's case free from scrutiny or interference by an adversary."); *see also Ostrowski v. Holem*, 2002 WL 31956039, at *4 (N.D. Ill. Jan. 21, 2002) (noting that ordering production of a closed criminal file carries no risk of interference with an ongoing criminal investigation).

      The CCSAO's cited cases do not support application of the privilege here. In *Hobley*, the Seventh Circuit reversed the imposition of discovery sanctions against a

4

defendant whereby its former counsel was ordered to produce materials from a prior proceeding that it considered work product. *See Hobley v. Burge*, 433 F.3d 946 (7th Cir. 2006). The Seventh Circuit held that because the former counsel was not a party to the suit, it had no obligation to monitor the proceedings and volunteer that it possessed potentially responsive information and could not be said to have waived possible work product protections. *Id.* at 951. Although the court reversed the production order, it left open the possibility that the work product claim might still fail. *See id.* at 952 ("Should Hobley choose to subpoena the Jones Day documents, the firm's privilege claims may be tested under the normal procedures for attorney work product."). *Hobley* therefore does not stand for the general proposition that a non-party may assert work product protection over materials sought via subpoena. CCSAO's other cases also expressly acknowledge the prevailing rule. *See Saunders v. City of Chicago*, 2015 WL 4765424, at *14 (N.D. Ill. Aug. 12, 2015) (noting that work product privilege ordinarily does not protect prosecutor's materials in a subsequent civil lawsuit); *Patrick v. City of Chicago*, 111 F. Supp. 3d 909, 917 (N.D. Ill. 2015) (citing the rule but declining to reach the issue because no party raised it).

The Court sees no reason to depart from the majority view that work product protections are not available when a prosecutor in a prior criminal investigation objects to discovery of purported work product by a litigant in a related civil lawsuit to which the prosecutor's office is not a party. The CCSAO's work product claim in this case must be rejected.

2. Deliberative Process Privilege

"The deliberative process privilege protects communications that are part of the decision-making process of a governmental agency." *U.S. v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993). "The privilege is designed to protect frank discussion of legal and policy matters that are essential to the decisionmaking process of a governmental agency." *Hill*, 2015 WL 12844948, at *3. Allegedly privileged materials must be both pre-decisional and related to the process by which policies are formulated. *Enviro Tech Int'l, Inc. v. E.P.A.*, 371 F.3d 370, 375 (7th Cir. 2004).

Walls argues that the deliberative process privilege does not apply to the handwritten notes because they concern a single criminal case and "have nothing to do with any overarching policy of the State's Attorney's Office." R. 62, at 6. The court in *Hill* rejected a similar argument. *See* 2015 WL 12844948, at *3 (reasoning that prosecutorial decisions in individual cases are reflective of governmental policy decisions). Other courts have likewise held that the deliberative process privilege can apply to memoranda, notes, and other documents created while evaluating whether to prosecute an individual defendant. *See, e.g.*, *Stamps v. Town of Framingham*, 38 F. Supp. 3d 134, 141 (D. Mass. 2014) ("Documents discussing whether criminal charges should be brought against an individual are direct parts of a deliberative process on legal matters, and therefore fall under the deliberative-process privilege."); *Gomez v. City of Nashua*, 126 F.R.D. 432, 435 (D.N.H. 1989) ("Similarly, the court finds that any handwritten notes taken in the course of witness interviews and while reviewing transcripts are part of the deliberative process which could reflect judgments regarding the Attorney General's decision not to prosecute the case.

6

Accordingly, the documents requested are subject to the privilege."). Furthermore, extending the deliberative process privilege to these types of materials advances the privilege's aim of promoting candid communication by and among government officials without undue fear of disclosure. *See Anderson v. Marion Cty. Sheriff's Dep't*, 220 F.R.D. 555, 560 (S.D. Ind. 2004). It is also undisputed that the notes at issue, which were created by Yassan in the two months before the CCSAO decided to drop the felony charge against Walls, are pre-decisional and pertain to the charging decision. The Court therefore finds that the handwritten notes at issue may be protected by the deliberative process privilege.

Courts follow a two-part analysis to determine whether to uphold a claim of deliberative process privilege. First, the court must decide whether the government has met its burden to show the privilege applies to the documents it seeks to protect. *Ferrell v. U.S. Dep't of Housing and Urban Dev.*, 177 F.R.D. 425, 428 (N.D. Ill. 1998). If the government meets this burden, the party seeking discovery must show that it has a particularized need for the documents that outweighs the government's interest in confidentiality. *Id.* To establish the *prima facie* application of the privilege, three things must occur:

> (1) the department head with control over the matter must make a formal claim of privilege, after personal consideration of the problem; (2) the responsible official must demonstrate, typically by affidavit, precise and certain reasons for preserving the confidentiality of the documents in question; and (3) the official must specifically identify and describe the documents.

*Id.*

7

Walls disputes that ASA Yassan is a "department head," but as the author of the notes at issue and the official in charge of Walls's original prosecution, he is likely the person best equipped to assert and defend the privilege claim here. In any event, the CCSAO's opposition is signed by the State's Attorney (through counsel).

Whether the CCSAO has adequately supported its privilege claim is a closer question. Admittedly, the requirements for the supporting affidavit are not particularly onerous. For example, the *Ferrell* court found the agency had satisfied its burden via an affidavit that asserted the documents were pre-decisional, deliberative materials related to an ongoing agency program and that their disclosure would impair the free flow of opinions, arguments, and recommendations within the agency, thus adversely harming the public interest. *Id.* at 429. That said, ASA Yassan's affidavit is very conclusory, and much of it directed toward the elements of the work product privilege, which the Court has already rejected. The CCSAO has provided substantially more detail on other occasions. *See, e.g.*, *Hill*, 2015 WL 12844948, at *4. Walls is not far from the truth in arguing that the privilege log and affidavit here are so devoid of specificity that they could be submitted for essentially any case simply by changing out the names. Ultimately, both parties appear to understand the nature of the materials being withheld, so requiring additional detail at this point may be a hollow exercise.

Even assuming the CCSAO's submission is sufficient to establish a *prima facie* claim of privilege, Walls has advanced several arguments to support a particularized need for the evidence. Among the relevant factors that courts consider are:

8

> (1) the relevance of the documents to the litigation; (2) the availability of other evidence that would serve the same purpose as the documents sought; (3) the government's role in the litigation; (4) the seriousness of the litigation and the issues involved in it; and (5) the degree to which disclosure of the documents sought would tend to chill future deliberations within government agencies….

*Ferrell*, 177 F.R.D. at 429.

Some of these factors favor Walls. The case at hand is undoubtedly serious—Walls alleges that officers with the Chicago Police Department seriously injured him without justification, then fabricated evidence to cover up their conduct. Evidence pertaining to why the felony charge against Walls was dropped would seem to be highly relevant to at least Walls's malicious prosecution claim. *See Anderson*, 220 F.R.D. at 561 (noting that where a decision-making process itself is the subject of litigation, the deliberative process privilege should not preclude discovery of relevant information).

Other factors favor the CCSAO. For example, as other courts have noted, prosecutor impressions of evidence and handwritten comments on those impressions are "exactly the kind of frank discussion that the deliberative-process privilege is designed to protect." *Stamps*, 38 F. Supp. 3d at 141; *see also Saunders*, 2015 WL 4765424, at *23. The CCSAO also asserts that the information in the notes can be obtained through alternative means of discovery, such as written interrogatories.

On balance, these factors are difficult to assess without a clearer sense of what information is being withheld. In such circumstances, *in camera* inspection of the withheld material is appropriate. *See Hill*, 2015 WL 12844948, at *4 (ordering *in camera* review of document containing notes on charging decisions). The CCSAO has

9

requested the Court conduct *in camera* review of the document in lieu of ordering its production. The Court will review the document in question before making a final determination.

## Conclusion

For the foregoing reasons, the Court enters and continues Walls's motion pending *in camera* review of the withheld document. Within seven (7) days of the entry of this order, the Cook County State's Attorney's Office shall submit an unredacted copy of the document and an additional copy reflecting any portions that have already been produced to Walls. The copies may be emailed to the undersigned District Judge's courtroom deputy.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: April 4, 2022